*Windham,*
*July, 1833.*
————
Remmington
*v.*
Cady.

———◆———

REMMINGTON and another *against* CADY and others.

The interest of one joint tenant in the joint property, may be taken by attachment, for his individual debt; and the property attached may be removed, notwithstanding the rights of the other joint tenant under an agreement between themselves, may thereby be impaired.

In a lease by *A* of his farm to *B*, it was stipulated, among other things, that the produce of the farm should be equally divided between them, when fit for market; and that *A's* share should be delivered at a certain place in another state, free from expense. *B* having occupied the farm under the lease about one year, and having raised a quantity of corn and buck-wheat, which were severed from the soil, but remained thereon, wanting husking and winnowing to be fit for market, and having, at the same time, a number of hogs, part of the stock of the farm, shut up in a pen to be fatted for market, *C* attached *B's* interest in such corn and buck-wheat, to secure a debt against *B* individually. *C* then husked the corn and winnowed the buckwheat, and removed one half of each. In an action of trespass, brought by *A* and *B* jointly, against *C*, for such taking and asportation, while the property attached remained in the custody of the law, holden to respond the future judgment, it was held, that *C* was not liable; for although he could not sever the joint ownership of the property, and although after attaching *B's* interest in the property, which was the undivided half, the correct course would have been to remove the whole, and when it should come to be sold on execution, to dispose of *B's* interest therein, yet the plaintiffs, who claimed to be joint owners of the property still, and sued as such, could not complain of *C's* having removed a part instead of the whole, the residue being left subject to the same rights of ownership as existed before the levy, and the time of sale on the execution not having arrived.

THIS was an action of trespass *de bonis asportatis ;* tried at *Brooklyn, January* term, 1833, before *Church,* J.

In *October,* 1830, *Remmington,* one of the plaintiffs, owning a farm in *Plainfield,* leased it to *Perry,* the other plaintiff, for one year, by an indenture, containing, among others, the following stipulations: That the farm was to be let and occupied, *to the halves ;* the parties to find the stock equally ;

all kinds of articles raised on the farm to be divided, when fit
for market ; *Remmington's* half to be delivered at *Warwick*
or *Providence* in *Rhode-Island*, free from expense ; all fod-
der and grain to be at the expense of the parties equally, for
the use of the stock ; and all fodder raised on the farm to be
foddered out upon it.

*Windham,*
*July, 1833.*

*Remmington*
*v.*
*Cady.*

In *October* 1831, while *Perry* was on the farm, cultivating
it under and according to the terms of the lease, the defend-
ants entered thereon and seized a quantity of corn-buts and
buck-wheat, husked out the corn, winnowed the buck-wheat,
and carried away two loads of the corn, containing 100 bush-
els of ears, and 40 bushels of buck-wheat.

The plaintiffs introduced evidence to prove, that at the time
of the entry by the defendants, there were enclosed in a pen
twelve hogs, a part of the stock of the farm, shut up to be fat-
ted for market; that the defendants, in entering, used un-
necessary violence, breaking a gate that had been fastened ;
that the corn was husked in a slovenly manner, thrown away,
shelled out and wasted ; that the buck-wheat was winnowed
in a slovenly and wasteful manner, in a wet and damp condi-
tion, and at a time when the weather was unsuitable; and that
in removing the property, the defendants left the usual pathway
and went across the mowing lands, took down the fences, broke
some of the rails, &c.

The defendants, admitting their entry upon the land descri-
bed, and the taking of the corn and buck-wheat, justified their
acts, on the ground that *Cady*, one of the defendants, had in
his hands, as deputy sheriff, two lawful writs of attachments
against *Perry*, by virtue of which he attached the one undivi-
ded half of said corn and buck-wheat, on said farm, as *Perry's*
property ; that he took the other defendants with him, as his
assistants ; that after having demanded admittance, which was
refused, they removed the gate with as little damage to it as
was practicable ; that when in, they husked the corn and win-
nowed the buck-wheat as prudently as it could be done ; and
that having called upon *Remmington* to divide the same, and
he having refused, the defendants measured up the corn and
buck-wheat, leaving one half thereof for *Remmington*, and
removed *Perry's* half (except ten bushels of the corn) to a
place of security, to respond such judgments as might be ren-
dered on the writs.

*Windham,*
*July, 1833.*
───────
Remmington
*v.*
Cady.

The plaintiff claimed, and prayed the court to instruct the jury, that the defendants had no right, under said attachments, to take away any part of said corn or buck-wheat for the individual debts of *Perry ;* that the defendants had no right to break down the gate, and seek a new pathway to carry off the grain ; that if the jury should find, that the corn and buck-wheat were improperly husked and winnowed, and thereby damaged and wasted, the defendants were trespassers *ab initio ;* but if not trespassers *ab initio,* they must be liable to such damages as arose in consequence of their acts of misconduct; that as said produce was not fit for market, and said hogs and stock were to be fattened on the grain, by virtue of the indenture, before it could be delivered or removed, the plaintiffs were, on that ground, entitled to a recovery.

The court instructed the jury,

1. That by the terms of the lease and the occupancy of the farm under it, the plaintiffs were constituted joint owners or cotenants of the corn and buck-wheat raised on the farm ; that the officer had by law a right to levy said writs of attachment upon *Perry's* interest in this grain, and to take all reasonable measures to secure the same, so that it might be forth-coming to respond the judgments to be recovered ; and that for this purpose, he had a right prudently to remove the property to a place of safety ; and this too, notwithstanding the stipulations in the lease regarding the time of division or place of delivery.

2. That the defendants had a right to use as much force as was reasonably necessary, either to overcome the resistance offered to them, or to levy upon and secure the property attached ; provided the officer first gave notice to the plaintiffs of his authority and purpose, and requested admittance.

3. That the officer had right to pass with his loads of property attached in a different place from the ordinary passway ; provided that from the place of his destination, the weight of his loads or other circumstances, it was more convenient to pass that way, and it would occasion no more damage to the plaintiffs ; and provided he did no unnecessary damage.

4. That the defendants, in husking the corn and winnowing the buck-wheat, would not be trespassers, *ab initio* or otherwise, if they performed those acts in a reasonable and prudent manner, and were not guilty of gross negligence or mismanagement therein.

The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial for a misdirection.

*Goddard* and *Judson*, in support of the motion.

*Strong* and *Dyer*, contra.

BISSELL, J. Several claims were made by the plantiffs in the court below, and upon which they requested the judge to charge the jury, which it is unnecessary now to consider; as upon some of them the charge was in favour of the plaintiffs; and others have not been insisted on, before this court.

The principal question here raised and discussed, is, whether *Cady*, the officer, had a right to enter the premises, and remove the personal property, in virtue of the attachments which he held; and which were against *Perry* only.

The jury were instructed, that the effect of the agreement between *Kemmington* and *Perry*, and the occupancy of the farm under it, was to make them joint-tenants or co-tenants of the property in question.

Of the principle here laid down, the plaintiffs, surely, cannot complain; for it lies at the foundation of their action. They can recover, only, for an injury done to *their joint property*. Nor has the general proposition, that the interest of one joint tenant in the joint property, may be taken for his individual debt, been questioned. That principle is, indeed, too well settled, to admit of a question. But it has been contended, that *Perry's* interest in this property could not be taken, as the removal of it would defeat the stipulations, contained in the contract between him and *Remmington;* that one joint owner of property has no right to do any act prejudicial to the rights of his co-tenant; and as the creditor acquires no further right than his debtor had, of course, he can do no such act. Let us examine these several objections, or rather, these several branches of the same objection, a little in detail.

It is, undoubtedly, true, that the removal of this personal property, went to defeat some of the stipulations contained in the contract between these plaintiffs. But does it, therefore, follow, that it cannot be removed? Such a conclusion would obviously contravene one of the fundamental principles of public policy, as well as of law, *viz.* that *all* the property of a

man shall be liable to the payment of his debts. For it is very clear, that the effect of the doctrine contended for, would be, to lock up all property held in joint-tenancy or in common, against the creditors of either of the co-tenants. There might be an express agreement between them, that the joint property should not be liable for the individual debts of either. Was it ever supposed, that such an agreement could shield the property against the claims of creditors? In almost every instance, where the interest of one partner in the partnership property, is attached, for his individual debt, the consequence is, that the co-partnership is dissolved; and that, perhaps, in contravention of an express agreement between the parties. But who ever supposed, that this consideration had any effect, to prevent the levying upon partnership property? Who ever supposed, that a great principle of public policy must yield to an agreement between individuals? Nothing is clearer, than that the converse of this is true.

The agreement, therefore, between these plaintiffs, cannot redeem the case from the operation of the general rule.

But it is said, again, that *Perry* could do no act prejudicial to the rights of his co-tenant. He could not remove the property from the premises; and of course, the creditor, who acquires his rights, and stands in his place, cannot do it. It is not very easy to see how the case is relieved from embarrassment upon this hypothesis :—for this is an action, as we have seen, brought for an injury done *to the joint property of the plaintiffs.* But the agreement proceeds upon the ground that this joint interest is destroyed; and that a third person has come in the place of *Perry.* The very supposition is fatal to this action. But, it should be held in mind, that this action is brought against the officer. And if the principle is to be adopted, that he cannot remove the property, because *Perry* could not, it follows, as a necessary consequence, that the property is not liable to attachment. For it is essential to the lien created by attachment, that the property should be removed, and held in the custody of the law; and if left in the possession of the party, the lien is thereby discharged. *Taintor* v. *Williams,* 7 *Conn. Rep.* 271.

The plaintiffs' claim to recover, therefore, on the ground that the entry of the defendants and their removal of the property, was in violation of the contract, or that these acts were prejudicial to the rights of *Remmington,* is manifestly without founda-

tion. The officer had, as is laid down in the charge, a lawful right to levy the writs of attachment upon *Perry's* interest in the property, and to take all reasonable measures to secure the same.

The only remaining question, is, whether the officer has so levied upon, and so conducted with the property, as to subject him to this action.

It seems, that he undertook to make a division of the property, leaving the share of *Remmington* upon the ground, and carrying away a part of that, which he supposed belonged to *Perry*. This, it is contended, could not be done; and that the effect of this unlawful act, was, to render the entry unlawful, and the defendants trespassers from the beginning.

It may be readily admitted, that it was not in the power of the officer to sever the joint ownership of this property; that he would have been justified in removing the whole, or so much of it, as that *Perry's* undivided interest in that which was taken, would have been sufficient to answer the demands against him; and that when the property came to be sold on execution, *Perry's* undivided interest only, could have been disposed of. And it may be further admitted, that the property might have been so conducted with, or so disposed of, as to subject the officer, and those concerned with him, to this action. But we are not called upon to decide, what would have been the correct mode of proceeding under an execution, nor what might have been the effect of an unlawful disposition of the property. The action, it should be remembered, was brought while the suits under the attachments were still pending; while the property was yet in the custody of the law, and holden to respond such judgments, as might eventually be recovered. The case does not rest on the ground of an unlawful disposition of the property; but upon the ground of an unlawful taking. The argument, upon this part of the case, proceeds on the idea, that the officer might have taken, and ought to have taken, all the property, but inasmuch as he has taken a part only, he is a trespasser. It is not very easy to discern the connection between the premises and the conclusion. It would seem, that a power to take the whole, involved a power to take a part only. Nor does it vary the case, that the officer undertook to do a nugatory act; nor that he called the part of the property which was left, *Remmington's*, and that which was

*Windham,*
*July, 1834.*
_____

Remmington
*v.*
Cady.

removed, *Perry's.* Neither the act nor the declarations of the officer can alter the law, nor in any way affect the rights of the parties. His return shows that he levied the attachments upon the undivided half of all the property. He, confessedly, had a right to remove the whole, under this levy. He has removed only a part, and with regard to the residue has left the parties to the same rights of ownership, as existed before the levy. Of what, then, can they complain ?

I think the charge correct ; and would not grant a new trial.

The other Judges were of the same opinion, except CHURCH, J., who was not present when the case was decided.

New trial not to be granted.