## BUDDINGTON *against* STEWART.

The interest of a minor owner of a vessel in port, as tenant in common with others, is liable to attachment.

If after the attachment of the interest of such minor owner, the other owners are desirous of sending the vessel on a voyage, they may, upon a proper application, be compelled to give security for the lien acquired by the attachment.

Though by the general maritime law, repairs made upon, and necessaries furnished to a foreign vessel, or a vessel in a port of a state to which she does not belong, give the party making such repairs and furnishing such necessaries a lien on the vessel itself for his security; yet in respect to repairs and necessaries in the port or state to which the vessel belongs, the municipal law of that state alone is to govern, and no lien is implied, and none exists, which is not created or recognized by that law.

By the municipal law of this state, no such lien is created or recognized.

Where it was claimed, upon the facts in the case, that the debtor's interest in the vessel and cargo, was that of a partner; it was held, that admitting this to be so, such interest was equally liable to attachment as that of a tenant in common, with this limitation only, that it be taken subject to the payment of the partnership debts.

Where the debtor was both master and part-owner, and by the shipping articles for the voyage on which the cargo was obtained, the master and crew were to receive for their services certain proportions of the earnings ; and it appeared, that his share of the ship and cargo was more than sufficient to meet the creditor's demand, after paying his proportion of all the partnership debts ; it was held, that it made no difference as to the result, whether the shipping articles gave the master and crew a joint interest in the cargo with the owners, or only furnished a rule by which the amount of their wages was to be determined ; for in either event, he had an attachable interest, of a sufficient amount.

THIS was an action on the case against the defendant, as sheriff of the county of *New-London,* for the default of one of his deputies.

The cause was tried at *Norwich, March* term, 1841, before *Waite,* J.

The plaintiff had prayed out a writ of attachment, in his favour, against one *Smith ;* and had delivered it to one *Hart,* as the defendant's deputy, who, by virtue thereof, attached all *Smith's* right, title and interest in the ship *Bingham* and her cargo. The writ was duly returned, and the plaintiff afterwards obtained judgment, took out execution and delivered it to a constable, who made search and demand for the property, and finally returned the execution unsatisfied. *Hart* neglected to retain the property by him attached, so that it could be applied in satisfaction of the plaintiff's judgment.

The only question made by the defendant, on the trial, was, whether *Smith* had such an interest in the ship and cargo as to make it the duty of the officer, after having levied the attachment, to hold the property so that it might be applied in satisfaction of the execution.

To shew *Smith's* interest, the plaintiff introduced as a witness *Benjamin Brown,* who testified, that the ship *Bingham* was purchased in the *Spring* of 1836, to be sent on a whaling voyage, and was divided into thirty-two shares ; that in *June* of that year, he sold two shares of the ship to *Smith,* for 188 dollars, upon an agreement that *Smith* should pay for them and his part of the repairs and outfits, as he could spare the money and the ship earned it ; that the ship was afterwards, on the 1st of *August,* 1838, duly registered in the names of *Brown, Smith* and five other persons, as the only owners ; that the ship was repaired and fitted out for the voyage, by *Brown,* as the agent, ship's husband or managing owner ; that in *August,* 1836, she sailed on a whaling voyage, and returned to *New-London,* on the 20th of *April,* 1838, with a cargo of oil and whale-bone on board, when the plaintiff's attachment was served.

*Smith,* during the voyage, was master, and was to receive for his services, in lieu of all other pay, one seventeenth part of the earnings of the ship and crew. The crew, amounting to thirty-nine in number, were to receive other proportions of the earnings, varying from one twenty-sixth to a one hundred and fiftieth part. The shipping articles, which the master and crew signed, contained, among other things, the following provisions : " And the owners of the said ship *Bingham,* here-

*New-London,*
*July, 1841.*

*Buddington*
*v.*
*Stewart.*

by promise, upon the fulfilment of the above conditions, to pay the shares of the net proceeds of all that shall be obtained by the crew, during the said voyage, agreeably to the shares set against their respective names, as soon after the return of the voyage, as the oil, or whatever else may be obtained, can be sold, and the voyage made up, by the owners or agent of said ship, first deducting all such sums as may be due from them, to the owner or officers thereof, for advances, supplies or debts arising from any other consideration ; and we hereby pledge to the owners our several shares as security for the payment of the same."

*Smith's* part of the repairs and outfits, which it belonged to him to pay, as owner of one sixteenth part of the ship, amounted to 1,812 dollars, 88 cents, and including the cost of the ship, to 2000 dollars, 88 cents.  He paid *Brown,* on the 1st of *August,* 1836, previous to his sailing, 400 dollars.  On the 9th of *May,* 1838, after the attachment, he gave to *Brown* a bill of sale of his sixteenth part of the ship for 625 dollars, and *Brown,* shortly afterwards, sold the ship for 10,000 dollars.  Upon settling up the accounts of the voyage, on the 18th of *June,* 1838, it was found, that *Smith's* share of the cargo as master, amounted to the sum of 1142 dollars, 54 cents, and his share as owner of one sixteenth part, to the sum of 840 dollars, 12 cents ; so that upon adjusting the accounts with *Smith,* and giving him credit for the 400 dollars, the avails of his part of the ship, and the avails of his part of the cargo as master and owner, and charging him with the original cost of his part of the ship, and his part of the expenses for repairs and outfits, with the interest, it was found, that there was due to him from *Brown,* the agent, the sum of 896 dollars, which sum was accordingly paid to *Smith.*

The ship, after her last-mentioned sale by *Brown,* was owned in part, by some of her former owners ; and before final judgment was rendered against *Smith,* and for more than sixty days thereafter, was out upon a whaling voyage.

The question between the parties, was, whether upon the foregoing facts, the plaintiff was by law entitled to recover his demand.

The defendant claimed, 1. That *Hart,* the deputy of the defendant, was not bound to retain the ship until sixty days after final judgment.  2. That *Smith's* share, as part-owner of

the vessel and proceeds of the voyage, was bound to *Brown,* and the other part-owners, for his part of the repairs and outfits, due from him and unpaid; and that, the balance only, after settling the accounts of the part-owners, was the property of *Smith;* that the managing part-owner had a lien on said share for its proportion of repairs and outfits. 3. That at the time the writ against *Smith* was served, *Smith* had not, as master of the ship, any such interest in the cargo as the officer could attach, or was bound to hold until final judgment, to be sold on the execution to satisfy it. And the defendant prayed the court to instruct the jury in conformity to these claims.

The court did not so instruct the jury, but told them, that upon the facts proved and admitted, the plaintiff was entitled to recover the amount of his demand; which was 300 dollars, with interest.

The jury returned a verdict accordingly; and the defendant moved for a new trial for a misdirection.

*Brainard,* in support of the motion, contended, 1. That the officer was not bound to keep possession of the ship, on account of *Smith's* interest in her, (*viz.* one sixteenth part) until sixty days after final judgment: nor had he a right so to do. *Cady* v. *Remmington,* 10 *Conn. Rep.* 44. *Prentis* v. *Ladd,* 12 *Conn. Rep.* 334. Ex parte *Blanshard* & al. 2 *Barn. & Cres.* 244. *Lex Merc. Am.* 99. *Abbott on Shipping,* 70. 73.

2. That *Smith,* as part-owner, (*viz.* of one sixteenth) was in debt, after a losing voyage, to the others in interest, and had no attachable interest; for, as part-owner, there was a balance against him. *Church* & al. v. *Knox* & al. 2 *Conn. Rep.* 514. *Brewster* v. *Hammet,* 4 *Conn. Rep.* 540. *Barber* v. *Hartford Bank,* 9 *Conn. Rep.* 407. *Witter* v. *Richards,* 10 *Conn. Rep.* 37. *Yale* v. *Yale,* 13 *Conn. Rep.* 189. *Johnson* v. *Sanford, Id.* 446. The law of partners is, in this case, the law of part-owners. *Collyer on Part.* 65. 176. 666. n. *Smyth* v. *De Sylva, Cowp.* 471. *Mumford* v. *Nicoll,* 20 *Johns. Rep.* 611. 615. 627. *Holderness* v. *Schackels,* 8 *Barn. & Cres.* 612. *Abbott on Shipping,* 76. 77. 79.

3. That *Smith's* interest as master, was his wages, or rate of pay, and could not be attached, or blended and confounded with his interest as part-owner. See the *Shipping articles.*

*New-London, July, 1841.*

Buddington
*v.*
Stewart.

2 *Saund. Pl. & Ev.* 218. *Loomis* v. *Marshall*, 12 *Conn. Rep.* 69. *Wilkinson* v. *Frasier*, 4 *Esp. Rep.* 182.

*Strong*, contra, insisted, 1. That here was personal property—the vessel, oil, &c.—within the jurisdiction of the court, which belonged to some body, and which was attachable.

2. That *Smith* being a tenant in common of the ship, his creditor had a right to attach his interest in her. *Remmington* & al. v. *Cady* & al. 10 *Conn. Rep.* 44. And there is no difficulty arising from the circumstances of the case. The voyage was ended. The officer took actual possession of her; and then delivered her up. She was soon afterwards sold for 10,000 dollars.

3. That *Smith* had an attachable interest in the cargo. A share of it belonged to him, as master, or part-owner, or in both capacities. The subject was not too slippery to be taken and held by the law. If it was, or may be considered as, partnership property, this fact interposes no insuperable difficulty; for the debtor's interest in partnership property may be attached. Here was an excess beyond the partnership debts, sufficient to satisfy the plaintiff's claim.

WAITE, J. The defendant's deputy, in this case, attached all *Smith's* interest in the ship *Bingham* and her cargo, but did not hold it, so that it might be applied in satisfaction of the judgment obtained in the suit. It is very clear, that the defendant is liable for this omission of the officer, unless there is something in the case to excuse it; for, it is admitted, that *Smith* had an interest in them.

1. If *Smith's* interest in the ship was owned by him, as tenant in common with others, it was liable to attachment. That principle was fully recognized, by this court, in a recent case; and we there held it too well settled to admit of a question. *Remmington* v. *Cady* 10 *Conn. Rep.* 44.

Indeed, the general principle seems not to be denied. But it is said, that ships furnish an exception to this rule; that as a majority of the owners of a ship can send her upon a voyage, contrary to the will of the minority, an officer who has attached only the interest of a minor owner, cannot detain her from the other owners.

It is wholly unnecessary to enquire what would have been

the effect of such a taking by a majority, had it been done, *New-London,* July, 1841. because no such fact appears in this case. One thing is cer- tain ; they could not have done it, without being compelled, *Buddington v.* upon a proper application, to give security to the dissenting *Stewart.* owners. And even a minority of the owners, it seems, may employ a ship, in like manner, if the majority refuse to em- ploy her at all. *Steam-Boat Orleans* v. *Phoebus,* 11 *Peters* 183. In the matter of *Blanshard* & al. 2 *B. & Cress.* 244.

If the interest of one joint owner of a ship is attached, and the other owners are desirous of sending her upon a voyage, we see no difficulty in compelling them to give security for the lien acquired by the attachment, as well as for any other interest.

It is the policy of our law to render all a man's property liable for his debts ; and we see no good reason why his share of a ship may not be attached, as well as his share of a stage- coach. The circumstance that the other owners of a ship may, upon certain terms, be allowed to continue her in busi- ness, will not, in our opinion, be sufficient to vary the general rule.

But it is further claimed, that *Brown* had a lien upon *Smith's* part of the ship, for his proportion of the repairs and outfits, to an amount greater than the value of that part. But how was this lien created? It is not claimed, that it was created, by any specific agreement of the parties. Certainly, no such agreement is shewn.

If there was any such lien, it must have arisen by opera- tion of law. Now, the rule laid down upon this subject, by the supreme court of the *United States,* is this : Where re- pairs have been made, and necessaries furnished to a foreign ship, or to a ship in a port of a state to which she does not belong, the general maritime law gives the party a lien on the ship itself for his security. But in respect to repairs and necessaries, in the port or state to which the ship belongs, the case is governed altogether, by the municipal law of that state, and no lien is implied, unless it is recognized by that law. *The General Smith,* 4 *Wheat.* 438.

Here the ship and the parties all belonged to the same port. *Brown,* therefore, by the general maritime law, acquired no lien ; and we know of no municipal law of this state giving him one.

If, therefore, *Smith's* interest in the ship was that of a tenant in common, it was liable to attachment; and the case shews, that it was much more than sufficient to satisfy the plaintiff's demand, without resorting to the cargo. In that view, the direction given to the jury, by the superior court, would be right, without enquiring what his interest was in the cargo.

2. But it is claimed, that *Smith's* interest in the ship and cargo was that of a partner. Be it so. The authorities abundantly show, that it was equally liable to attachment as if owned by him as a tenant in common. *Remmington* v. *Cady*, 10 *Conn. Rep.* 48. *Brewster* & al. v. *Hammet* & al. 4 *Conn. Rep.* 540.

It is true, in such case, it must be taken subject to the payment of the partnership debts. *Church* & al. v. *Knox*, 2 *Conn. Rep.* 514. *Witter* v. *Richards*, 10 *Conn. Rep.* 37. *Holderness* v. *Schackels*, 8 *Barn. & Cress.* 612. And the case shews, that that interest was more than sufficient to pay his share of all the partnership debts and the plaintiff's execution. Why therefore should it not have been holden by the officer?

Again, it is said, that *Smith, as master*, owned no part of the cargo; and that his share of the ship and cargo, without any interest *as master*, was not sufficient to pay his proportion of the partnership debts.

It makes no difference as to the result of this case, whether the shipping articles gave the crew *a joint interest* in the cargo, or only furnished *a rule* by which the amount of their wages was to be determined. For if the cargo did not belong to the crew and the owners of the ship *jointly*, it must have belonged wholly to the owners.

If *Smith* took no legal interest in the cargo, *as master*, he must have been entitled to a greater interest as *an owner* of the ship. And whether we consider him as the owner of one seventeenth part of the cargo as master, and one sixteenth of the balance, after deducting the shares of the crew; or as owning one sixteenth of the *whole* cargo, without any such deduction; it will be obvious, that in either case, his share of the ship and cargo was more than sufficient to pay his proportion of all the partnership debts and the execution of the plaintiff.

We discover nothing in the case, going to shew, that *Smith* had not an attachable interest in the ship and cargo more than sufficient to satisfy the plaintiff's demand.

We are therefore satisfied, that the instructions given to the jury were right, and that no new trial ought to be granted.

In this opinion the other Judges concurred.

**New trial not to be granted.**