## Case No. 199.

### The ALIDA.

[Abb. Adm. 165.][1]

District Court, S. D. New York. Feb. 1848.

MARITIME LIENS — STATE LAW — DISCHARGE OF LIEN—CONTRACTS.

1. The libellant, a blacksmith, solicited the engineer of a domestic steamboat running daily between New York and Albany, to employ him in making such repairs as should be required during the season by the boat, in the line of his trade. The engineer promised this, and the libellant was called upon to make, and did make repairs upon the boat at various distinct times, sending in his bills monthly. *Held*—1. That these facts did not constitute an employment for the season, but that the libellant had a right of action for each distinct job when it was completed. 2. That libellant's lien upon the boat, if any, under the provisions of 2 Revised Statutes, p. 405, § 2, for each item of service rendered by him, was discharged on the lapse of twelve days after the departure of the boat from Albany for New York next following the rendering of such service.

[See note at end of case.]

2. The court affords a remedy against domestic vessels for labor, supplies, &c., furnished, only where the vessel is subject by the local law to a lien therefor; and the privilege is enforced subject to every qualification or limitation attached to it by that law.

[Cited in Thomas v. The Kosciusko, Case No. 13,901; The City of Salem, 31 Fed. Rep. 616.]

[3. Cited in The Albany, Case No. 131, to the proposition that a lien attaches to a foreign ship by the general maritime law, and that the different states of the federal union are, in regard to this question, regarded as foreign states to each other.]

[In admiralty.] This was libel in rem, by James O. Haight against the steamboat Alida, to recover for repairs made upon that boat. [Libel dismissed.]

The facts out of which this action arose were as follows: During the navigation season of 1847, the steamboat Alida, being then wholly owned in this state, was employed in running between New York and

---

[1][Reported by Hon. William Cranch, Chief Judge.]

[1][Reported by Abbott Bros.]

Albany, making regular passenger trips daily, Sundays excepted. The libellant was a blacksmith, residing at Albany, and he solicited the engineer of the boat to employ him in doing such jobs of work as should be required in the line of libellant's trade during the season. The engineer promised to do so; and at various times when the boat was at Albany, from August 4 to September 24, the libellant was called upon to make repairs upon the engine and other parts of the boat, and he supplied, during that time, all labor and materials within the scope of his trade which the boat required. These services were rendered by the libellant on the 4th, 6th, 13th, 18th, 20th, 22d, and 27th days of August, and on the 1st, 8th, 13th, 15th, 17th, 20th, 22d, and 24th days of September. The Alida changed owners in New York, September 21st; her down trip from Albany was on the 25th, and no work was performed on her by libellant subsequently. She was attached, on her arrival in New York, on other demands, but afterwards continued her trips as before. The engineer who employed the libellant left the boat on the 27th. There had accrued during the month of August, upon the libellant's account for services, charges amounting to $80.95, and the bill therefor was presented on the 1st of September. On the 20th of September, $50 was paid the libellant, and was credited on the August account. Early in October, the bill for the September work, including the arrears on the August bill, was presented to the owners in New York. The book-keeper of the libellant testified that it was his course of business to present the libellant's shop bills for payment on the first of each month. The libel was filed on the 7th of October.

John Cochrane and S. P. Staples, for libellant.

Smith & Woodward, for claimant.

BETTS, District Judge. The present action was commenced within twelve days after the libellant ceased working on the boat; but if each job created a debt by itself due and payable when such job was completed, all the items, excepting the last one, $13.43, had been due more than twelve days when the vessel was arrested, and more than that period would have elapsed after the work was finished, and after a departure of the vessel from the port of Albany to the port of New York. To sustain the action upon the facts shown, the libellant must maintain one of two propositions: that his employment was for the season, and that accordingly he had no right to arrest the boat until his contract was terminated by the expiration of the running season, or by the act of the owner of the boat; or that, in order to bar his remedy in rem, the boat must have left Albany and have remained absent for more than twelve days

continuously, after each particular indebtedness accrued.

In my opinion, the evidence in no way authorizes the assumption that the hiring of the libellant was for the entire season. The nature of the employment clearly indicates that it was merely for piece or job work, and that, in each instance, the libellant had a right to demand payment when the particular job was completed. It was the usage of his shop, indeed, to render bills to customers monthly; but that usage in no way affected the legal right of libellant to withhold the indulgence and exact ready pay, nor did it put him under obligation to proceed, and supply material and labor on credit throughout the season. Such usage could only tend to raise a presumption in favor of such credit; but this presumption, if unsupported by other proofs, would be of too slight a character to postpone his right to collect his charges, because it would be balanced if not indeed countervailed by another implication, that each piece of work or article of manufacture furnished by a mechanic, completes his obligation to his employer as far as that item of employment is concerned, and has no connection with or dependence upon other services, similar in character, rendered between the parties. This is the well-understood relation of employer and employed, in all cases of mechanical services; and there is no stronger inference in favor of a continuing credit where the employment is for a series of independent repairs to a single steam-engine, than where it is for the original construction of several different engines. In the absence of stipulations between the parties, the law assumes that a mechanic is entitled to compensation for his job when finished, (Story, Bailm. §§ 425, 426,) and the job must, in ordinary acceptation, be regarded as finished when all the material or labor demanded has been fully supplied. This is as true in relation to small items of mechanical labor and supplies, as it is in respect to those of the greatest magnitude and expense. The job of the block-maker is to all legal intents completed when he has finished the particular tackle ordered, as clearly as is that of the shipwright when the ship is launched and fully sparred; and either is then entitled at law to demand compensation for his labor and materials. If, then, the employment proved in this case were to be regarded as a contract for hire and materials, I should think it amounted to nothing more than an engagement by the libellant to answer such calls or orders as should be made upon him in his line of business, leaving his right to recover compensation therefor to stand upon the ordinary legal footing. In my judgment, however, the understanding between the libellant and the engineer constituted no agreement obligatory on either party. It was no more than the customary good-will solicited by tradesmen and mechanics, and

promised by those to whom application is made. These friendly assurances secure no right to either party which can be enforced against the other, as arising upon an agreement of legal obligation.

The question then arises, under the second point, whether the lien, if originally existing in favor of the libellant, was discharged by the departure of the boat from Albany, twelve days or more before the suit was brought. Where services or supplies are rendered to a foreign ship, a lien attaches by the general maritime law; and the different states of our Federal Union are, in regard to this question, regarded as foreign states to each other. The nature, extent and character of the lien, in such case, are to be determined, not by the local law of the particular state, but by the general principles of the maritime law applicable to the case. Zane v. The President, [Case No. 18,201;] The Nestor, [Id. 10,126;] The Chusan, [Id. 2,717.] But against domestic vessels the court affords a remedy only where they are subject by the local law to a lien for work done, or for articles or materials furnished in building or repairing the vessel, or for provisions or stores furnished within the state, and fit and proper for the use of the vessel when furnished; and accordingly the privilege is enforced, subject to every qualification or limitation attached to it by the state law. The case is governed altogether by the municipal law of the state, and no lien is implied, unless it is recognized by that law. The General Smith, 4 Wheat. [17 U. S.] 438; The Robert Fulton, [Case No. 11,890;] The Jerusalem, [Id. 7,294;] The Hull of a New Brig, [Id. 11,609;] The Bark Chusan, [Id. 2,717;] Peyroux v. Howard, 7 Pet. [32 U. S.] 324; Harper v. The New Brig, [Case No. 6,090;] [Buddington v. Stewart.] 14 Conn. 404; Davis v. The New Brig, [Case No. 3,643.]

The statute of the state of New York under which this lien must be supported, if at all, contains a provision that when the ship or vessel shall depart from the port at which she was when the debt was contracted, to some other port within the state, every such debt shall cease to be a lien, at the expiration of twelve days after the day of such departure; and in all cases the lien shall cease immediately after the vessel shall have left this state. 2 Rev. St. p. 405, § 2. The act preceding this, (Laws 1830, c. 320, § 50,) and the antecedent one, (Laws 1817, c. 60, § 1,) have always been held in this court to bar the arrest of a vessel after twelve days subsequent to her leaving (provided her departure is not clandestine or fraudulent) the port in which the lien was incurred, and going to another port in this state, without regard to the time during which she might remain away from the port where the debt was contracted. Jenkins v. The Congress, [Case No. 7,264;] The Joseph E. Coffee, [Id. 7,536.] I am satisfied that the state act demands that exposition, and should now only refer to the former

decisions in this court upon the subject, had it not been earnestly contended in this case that the meaning of the provision was clearly different from that of the former acts upon the same subject, and that it requires, in order to discharge the lien, a continuous absence of the vessel for more than twelve days from the port where the debt was contracted, and that she remain for that length of time in some other port or ports within the state. It was urged that any other construction would render the lien fallacious and worthless, for the reason that the creditor could never know when it was intercepted, or destroyed. Stress was also laid upon the decision of the supreme court of the state of New York, in Denison v. The Appellonia, 20 Johns. 194, as determining that the vessel must remain more than twelve days in the port to which she is removed, in order to divest the lien. And in view of this construction of the statute, it was further contended that the boat, having returned to the port of Albany on every day succeeding the one on which she left it, had never departed from that port within the intent of the statute. I think there is but slight call for construction in this case, as the words of the statute (2 Rev. St. 405, § 2) fix the meaning of the legislation with a clearness not to be strengthened by explanatory comments. The day of departure is the point from which the limitation commences running, and it becomes final at the expiration of twelve days after that day.

The reasons upon which the legislation on this subject rest also demand this construction of the law, in so far as it applies to cases not constituting maritime liens to be enforced by admiralty courts under their general jurisdiction. Those courts take no cognizance of such claims against domestic vessels in their home ports, excepting in execution of the local law. It is accordingly the lien of the artisan or furnisher, as recognized at common law, that the legislature had in contemplation and sought to extend. The Marion, [Case No. 9,087;] Moore v. Hitchcock, 4 Wend. 292. See, also, Harper v. The New Brig, [Case No. 6,090.] The common-law lien was dependent upon the actual holding in possession of the thing to which it attached, and any surrender, however brief, of such possession, divested or discharged the lien. So, when actual possession of the thing was not acquired, the lien never attached. Story, Bailm. §§ 440, 588; Ex parte Foster, [Case No. 4,960;] Meary [Meany] v. Head, [Id. 9,379.] This rule of law manifestly left mechanics, material-men, and others who furnished stores to vessels while anchored in port or moored at the dock, yet remaining in possession of their owners, masters, and crew, without other security for their claims than the personal responsibility of their agents or owners. This mischief is remedied by a statutory liability, having all the virtue of a common law and maritime

lien, not only while the vessel is under the hands of her creditors, but for twelve days after she departs from the port where the debts were contracted, to any other port within the state.

While there is an impressive equity in affording to creditors some means of protection against the sudden removal of vessels from under their hands, thus cutting off their security, it is plain that the legislature meant also to guard the public against prejudice from these tacit and secret claims. They are permitted, accordingly, to continue in existence for a short period after the vessel has gone from their quasi occupancy and possession. It is proper that sufficient time be allowed to enable the creditor to enforce his right; but no reason demands that these liens should be allowed to float with the vessel, going out of the port and coming back with her to it, so long as she may continue to revisit it, without her absence exceeding twelve days. On the contrary, this would tend to mislead and prejudice subsequent purchasers and creditors, as such prior lien, if sustained, would hold its preference against all subsequent claims, (Rankin v. Scott, 12 Wheat. [25 U. S.] 177,) and thus would be withdrawn all the protection which the limitation of time prescribed by the statute was designed to secure.

The supreme court of this state have evidently so understood the provisions of this act in Hancox v. Dunning, 6 Hill, 494. They preserved the lien in that case only because the vessel had not left the port or state within the meaning of the act. She had only gone out on an experimental trip to try her boilers, and it was held that the touching at a New Jersey port, while on such an excursion, did not divert the lien. The language of the court suggests that the present case would be regarded as coming within the limitation. The court say: "The reasonable construction is, that the lien ceases when the vessel departs from the port where the repairs were made, or leaves the state, upon a voyage or trip in the pursuit of some kind of trade or business." The boat in this case was running in steady employment as a passenger vessel, loading and unloading daily at the port of departure and destination, and completing her voyage on her arrival at the latter.

The case of Denison v. The Appellonia, 20 Johns. 194, relied upon on the argument, turned upon the language of the state act of 1817. Laws 1817, p. 49, c. 60, § 1. This provision is not incorporated in the Revised Statutes, and it is exceedingly difficult to comprehend what is intended by it. There is probably a misprint in the proviso; but as the decision of the court was upon a point of pleading, the only inquiry was whether the pleading had stated the case provided for by the act, and no attention seems to have been paid to the import and effect of the clause itself upon the rights and reme-

dies of privileged creditors. The proviso was, "that the said lien shall in no case endure beyond twelve days after such ship or vessel shall leave the port in which the same may have been arrested." The plea in bar to the proceedings was, that the vessel left, and for more than twelve days continued absent from the port where the supplies, &c., were furnished before her arrest. The court held the plea bad, because it did not state the cause which exonerated the vessel from the lien;—that is, her arrest, before her removal, and then her continuing absent more than twelve days after the arrest. No principle is settled by that case which is applicable to this.

I am, accordingly, of opinion, that any indebtedness to the libellant, which was a lien upon the boat, ceased to be so after the expiration of twelve days from her leaving Albany, and subsequent to the time the debt was due.

The last charge made against the boat by the libellant, September 24, being for less than $50, no lien arises in his favor for it, and upon the considerations stated, he cannot maintain the suit for the antecedent credit. Libel dismissed with costs.

NOTE, [from original report.] On the subject of liens upon domestic steamboats, see, also, the decision in another suit against The Alida, [Case No. 200.]