Marshall v. McGregor.

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 3, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]

———————•◆•———————

MARSHALL and others *vs.* McGREGOR.

In this State a sheriff, on attachment or execution against one of several partners, may take possession of the partnership property, sell the interest of the debtor in it, and deliver the property to the purchaser.

Hence, where an attachment has been issued against the property of one of several joint owners of a ship, at the suit of an individual creditor, upon which the sheriff has seized and taken possession of the ship, an injunction will not be issued in behalf of the other joint owners, to restrain the creditor and the sheriff from continuing in possession of, or detaining, the ship.

APPEAL by the plaintiffs from an order made at a special term vacating an injunction.

The plaintiffs are owners of fifteen-sixteenths of the ship *James Foster Jr.*, belonging to the port of New York, and being one of the old line of Liverpool packets of which C. H. Marshall & Co. are agents and ship's husbands. The ship runs regularly between New York and Liverpool. On the eve of her departure for Liverpool, on February 10, 1871, the vessel being fully loaded and ready for sea, hatches down, &c., with cargo on board belonging to different shippers, for which bills of lading were outstanding, the sheriff of New York, under a warrant of attachment against the property of one William Hatten, as a non-resident, issued by a judge of this court, in an action for the recovery of $2500 and interest, seized one-sixteenth of said ship, but took possession of the

Marshall *v.* McGregor.

vessel loaded as aforesaid. Nearly a month prior to the issuing of the attachment, (January 17, 1871,) the defendant had come to the ship with Hatten, his debtor, and claimed to take possession as mortgagee, of this same one-sixteenth interest, and, according to the plaintiffs' complaint and affidavits, did take possession thereof, and also gave out and threatened that he would keep the ship in port until his mortgage was paid, and that this suit was an execution of such threats. The defendant denied these allegations, but did not deny the attempted taking of possession, &c.; and it was claimed by the plaintiffs that this was an effort to coerce the owners of the remaining fifteenth-sixteenths into paying a debt of their co-owner to relieve the vessel and cargo from the embarrassment and delay of a seizure. The statute regulating attachments against non-resident debtors, &c., provides for the giving of security by the attaching creditor to pay damages for detaining a vessel where cargo is attached, but there is no similar provision in the case of attachment of an interest, however small, in a vessel. (2 *R. S.* [4,] § 13.) The plaintiffs could not apply for an order of sale of the interest until thirty days after the seizure. (2 *R. S.* [7,] § 26.) The plaintiffs being thus remediless under the statute, and the injury by a detention of the whole vessel and cargo being claimed to be irreparable, they commenced this action, in which they offered to give security for the full value of the interest attached, and applied for an injunction restraining the attachment creditor and the sheriff from taking, holding, or detaining the ship, or any interest, or continuing to hold or detain said ship, or any interest therein, under or by virtue of the attachment. A temporary injunction was granted on the giving of a bond in $7500.

A motion to continue the injunction was afterwards made, and denied. The following opinion was given at the special term.

CARDOZO, J.   The equity which the complaint presents—that the suit of the defendant was brought without right and simply to coerce the plaintiffs into paying or securing the defendant's claim—is fully denied by the opposing papers.   That being disposed of, I think there is neither precedent nor principle for the injunction issued in this case.

Undoubtedly a court of equity will interfere to prevent a ship from sailing, against the objection of an owner of a share, until the value of that share has been ascertained and security given for it.   (*Abb. on Shipping*, 104.)   But that is a very different thing from what has been done here.   The hardship upon the other owners does not alter the case.   They are in no worse position than that of any other copartner whose associate failed to pay his individual debt.   It is one of the risks which copartners take, and they cannot shift that risk from themselves over to the creditor.

The hardship to the plaintiffs is no reason why the creditor should not have the right to sue his debtor and to employ all the provisional remedies for his aid that the law affords.   They knew he could do so when they consented to own property jointly, and having taken the risk they must bear the consequences.   A person might as well claim, which it is well settled he cannot do, (13 *Abb. Pr.* 317,) to restrain the sheriff from taking possession of partnership property upon attachment or execution against one partner, because of the great harm the other partner would suffer by its removal, as to pretend that an injunction to remove the attachment in the case of the defendant should be allowed.   The fact that the property is a ship makes no difference.   The motion must be denied, and the injunction vacated, with costs.

From this order the plaintiffs appealed.

*Wm. Allen Butler*, for the appellants.

I. An interest in a vessel creates a tenancy in common, and not a partnership interest. (*Story on Part.* § 417, *n. Bishop* v. *Edmiston*, 16 *Abb.* 466.)

II. Being such an interest and liable to attachment, the sheriff could not enforce the attachment except by seizing the whole, and this involved taking and holding the entire cargo, in which the attaching creditor had no interest whatever; but which all the owners were bound by the outstanding bills of lading to carry at once to Liverpool, and of which the master and ship's husband were custodians for the benefit of all concerned.

III. The common law and the statutes of New York furnish, therefore, no means by which the master and owners of this vessel could relieve the vessel and cargo from the detention and consequent damage caused by the attachment.

IV. Hence it was a plain case to invoke the aid of the court on its equity side, and this was the sole means of at once amply securing the attaching creditor for his lien, and relieving the vessel and cargo, and the owners (including the owner of the one-sixteenth) from the disastrous consequences of the attachment. The right of a majority of the owners, on giving security, to employ the vessel against the wish of a minority is well settled, and the same principle of permitting her employment by such majority, after attachment of a minority interest, on giving security under the direction of the court, will be applied. In *Buddington* v. *Stewart*, (14 *Conn.* 404,) the court says: "If the interest of one joint owner in a ship is attached, and the other owners are desirous of sending her on a voyage, we see no difficulty in compelling them to give security for the lien acquired by the attachment."

V. The plaintiffs tendered full security (besides the undertaking already given;) and the court being able to make any direction in the premises to secure the attach-

Marshall *v.* McGregor.

ing creditor's rights, and being satisfied as to the security, the right to an injunction was clear.

VI. The defendant 'became mortgagee of the one sixteenth, with full knowledge that this vessel was in the regular Liverpool packet service; that C. H. Marshall & Co. were her agents. His rights and equities are therefore to be viewed in connection with this fact. He knew that the vessel was loading for Liverpool. He made no objection, but lay by until just as she was about to sail, and then seized the ship fully loaded with cargo. This was manifestly unfair, and an abuse of the process of the court.

VII. The above points are wholly irrespective of the further question whether the defendant could attach. This is the issue for the trial. It is plain that the injunction should have been retained until the trial.

The sheriff could not have been treated as a trespasser. (*Smith* v. *Orser*, 42 *N. Y.* 132.) But the execution of the warrant of attachment involved taking possession of the entire vessel with cargo on board. As the sheriff claimed no control over the cargo, the only alternative was to leave it on board until the other owners of the ship could apply for an order of sale of the interest attached, (*which could not be for thirty days, under the statute,*) or discharge the cargo, and so break up the voyage. All the owners were bound by the outstanding bills of lading. In this dilemma, on the giving of adequate security, the injunction was the only possible means of perfectly protecting all parties.

Judge CARDOZO's opinion does not touch this view of the case. (*See Turner* v. *Smith*, 1 *Abb. N. S.* 304.)

*Beebe, Donohue & Cooke,* for the respondent.

INGRAHAM, P. J. The case referred to by me, on the argument, was that of *The National Bank of New York* v. *The New Orleans and Carrolton Railroad, et al.,* (*N. Y.*

*Transcript, of June* 2, 1871,) where it was held that the effects of a partnership belong to the firm, and not to the partners, each of whom is only entitled to a share of what remains after payment of the debts of the firm. That the extent of the right acquired by a purchaser was an interest in the surplus which might remain after its debts were paid.

In this State, a contrary rule was adopted, and the courts have uniformly held that the sheriff, on attachment or execution, might take possession of the partnership property, sell the interest of the debtor·in it, and deliver the property to the purchaser. (*Goll* v. *Hinton,* 8 *Abb.* 120. *Smith* v. *Orser,* 43 *Barb.* 187; *S. C.,* 42 *N. Y.* 132.)

The decision in the United States Court seems better calculated to protect the rights of parties, but we are constrained to follow the decisions in this State.

As the attachment has been vacated, and the property discharged, there is no necessity for the injunction, whichever rule should be adopted.

The order appealed from should be affirmed.

Geo. G. Barnard, J., concurred.

Order affirmed.

[First Department, General Term, at New York, April 3, 1871. · Ingraham, P. J., and *Cardozo* and *Geo. G. Barnard,* Justices.]